IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 11-0262-WS |
| | ) | |
| STANLEY M. WRIGHT, | ) | |
| MARY L. WRIGHT a/k/a | ) | |
|    MARY W. STRACHAN, a/k/a | ) | |
|    MARY W. COOK, and | ) | |
| JANEY GALBRAITH, | ) | |
| | ) | |
|    **Defendants.** | ) | |

**ORDER**

This matter is before the Court on the government's fourth motion in limine. (Doc. 160). The motion is directed at the notice of intent to present expert testimony filed by defendant Stanley Wright ("Stanley"), the mayor of the City of Bayou la Batre ("the City"). (Doc. 159). The parties have filed briefs in support of their respective positions, (Docs. 200, 207, 231), and the motion is ripe for resolution.[1]

**A.  James Anderson.**

Anderson opines that Stanley did not violate Alabama ethics law in connection with the city council meeting at which the City purchased, with FEMA grant money, property he had recently given his daughter. Anderson further states that his opinion would be the same had Stanley still owned the property at the time of the purchase. (Doc. 159, Exhibit 4). The government objects that the opinion is irrelevant and that,

---

[1] Stanley's request for oral argument, (Doc. 200 at 7), construed as a motion, is **denied**. Local Rule 7.3.

[1]

even if relevant, it constitutes an inadmissible legal conclusion as to an ultimate question of law.

Count One of the third superseding indictment charges Stanley with conspiring to defraud the United States and to obtain property under the care, custody or control of the City by fraud or other improper means. Count One charges that Stanley participated in the decision to identify certain real property for the construction of a post-Katrina housing development funded by the FEMA grant. The site selected necessitated the acquisition of rights-of-way over three other parcels to accommodate additional and/or wider road lanes. Stanley owned one of these parcels, consisting of approximately 7.5 acres. Stanley transferred 0.208 acre to his co-defendant daughter ("Mary") for no financial consideration. A few days later, Mary sold this parcel to the City in fee (not just a right-of-way) for $27,249 (or $3.00 per square foot). Four days after receiving the purchase price from the City, Mary transferred to Stanley $25,000 spread over three checks and an additional $2,300 to her mother (Stanley's wife), with all four checks deposited in an account jointly owned by Stanley and his wife. (Doc. 180 at 3-6).

According to Stanley, the evidence will establish that he presided over the meeting at which the city council approved the purchase[2] but disclosed to the council his transfer of the property to Mary and abstained from the vote. (Doc. 200 at 2-3).[3] The gist of Anderson's opinion is that Wright thereby satisfied his "duty of disclosure and abstaining" under Alabama ethics law governing conflicts of interest. (Doc. 159, Exhibit 4).

The third superseding indictment cites and quotes 44 C.F.R. § 13.36(b)(3) for the proposition that "[n]o employee, officer or agent of the grantee or subgrantee shall participate in selection, or in the award or administration of a contract supported by

---

[2] Anderson's report states that Wright presided, (Doc. 159, Exhibit 4), and the minutes reflect that Wright called the meeting to order. (Doc. 200, Exhibit 1).

[3] The government agrees that Wright did so. (Doc. 132 at 1).

Federal funds if a conflict of interest, real or apparent, would be involved." Compliance with this provision was required by the grant agreement. These allegations are incorporated by reference into Count One. (Doc. 180 at 3). Such a conflict of interest arises when either the representative (Stanley) or a member of his immediate family (presumably, Mary) "has a financial or other interest in the firm selected for award." 44 C.F.R. § 13.36(b)(3)(i) – (iv). This is the only conflict-of-interest provision cited in the third superseding indictment.

The third superseding indictment does not allege that Stanley violated any duty to disclose his conflict of interest. Section 13.36(b)(3) does not contain any disclosure obligation, only a non-participation obligation. Nor does that section permit a covered person to participate in a covered transaction so long as he discloses his conflict of interest or complies with state ethics law. Stanley concedes by silence the accuracy of the government's assertion that "[t]here is no exception to this conflict of interest prohibition in federal law." (Doc. 160 at 1-2).[4]

In short, there is but a single provision that either the third superseding indictment or the government's motion in limine identifies as underlying its contention that Stanley impermissibly acted under a conflict of interest, and that provision neither rests on Alabama law, provides a safe harbor for those who comply with Alabama law, nor in any way invites review of Alabama law.

Stanley nevertheless gamely explores several avenues in search of an approach to relevance. First, he notes that the original and first superseding indictment cite and paraphrase Ala. Code § 13A-10-62(a). (Doc. 200 at 3). That statute makes it a misdemeanor for a public servant to exercise any substantial discretionary function in connection with a government purchase without making advance public disclosure of a known or potential conflicting interest in the transaction, and Anderson expressly relied

---

[4] Indeed, he acknowledges that non-participation is mandated by Section 13.36(b), regardless of Alabama law. (Doc. 200 at 5).

upon it in forming his opinion. But the second and third superseding indictments omit this language, and relevance cannot rest on allegations that no longer appear in the operative charging document.

Stanley next points out that the grant agreement between FEMA and the City provides that, when a state is the grantee, it "will follow the same policies and procedures it uses for procurements from its non-Federal funds." (Doc. 200 at 4). This language is drawn verbatim from 44 C.F.R. § 13.36(a). Stanley continues that the City, as sub-grantee, was subject to the same provision and that the "policies and procedures [the City] uses for procurements from its non-Federal funds" include compliance with Section 13A-10-62(a) and Alabama ethics law generally. (*Id.*). The government denies that this section applies, on the grounds that the City rather than the state was the grantee. (Doc. 207 at 3).[5] The parties' presentation is too shallow to resolve that issue,[6] but acceptance of Stanley's position would not render Anderson's opinion relevant. Even if the grant agreement required the City to comply with Alabama ethics law pursuant to Section 13.36(a), the government does not contend that Stanley violated Alabama ethics law. The government charges only that Stanley violated the conflict-of-interest provision of Section 13.36(b)(3), and it is not relevant to this charge that Stanley did not also violate Section 13.36(a) (and its supposedly incorporated Alabama conflict-of-interest provisions).

In a related vein, Stanley argues that Alabama ethics law is also incorporated into Section 13.36(b), on the grounds that subsection (1) requires covered grantees and sub-grantees to "use their own procurement procedures which reflect applicable State and local laws and regulations." (Doc. 200 at 4-5). The government does not address

---

[5] Section 13.36(a) provides that, if the grantee is not a state, Section 13.36(b) applies and Section 13.36(a) does not.

[6] Neither side even submits the contract, much less parses the bureaucratic language of the regulations on which it draws.

Stanley's textual argument, but it fails for reasons just stated. Even if the grant agreement and/or Section 13.36(b) required the City to comply with Alabama ethics law, the government does not charge Stanley with violating such law, and evidence that Stanley did not violate a duty he is not claimed to have violated cannot be relevant.

Finally, Stanley notes, (Doc. 200 at 2), in a previous filing on a different issue the government criticized him for not "disclos[ing] the conflict to FEMA and apply[ing] for a waiver." (Doc. 132 at 1). Contrary to Stanley's apparent assumption, the government did not thereby argue that he had an *obligation* to disclose the conflict *to the City* (much less one that he did not fulfill), only that he had an *option* to disclose the conflict *to FEMA* and perhaps receive a conflict waiver. The reference to disclosure is gratuitous and states only the obvious – that Stanley could not receive a conflict waiver from FEMA without telling FEMA of the conflict. It does not render relevant an opinion as to whether Stanley satisfied disclosure requirements (to the City, not to FEMA) under state law.

For reasons unknown, the government volunteered in its reply brief that Anderson's opinion could have "possible relevance" to Stanley's mental state or mens rea. (Doc. 207 at 4). The government raises other objections to the use of Anderson's opinion for this purpose, but the dispositive fact is that Stanley has not asserted relevance based on mental state – not even after the Court permitted him to file a sur-reply brief "addressing the new material contained in the government's reply brief." (Doc. 212). It therefore cannot furnish a basis for admitting Anderson's opinion.

For the reasons set forth above, the government's motion in limine as to James Anderson is **granted**.[7] Stanley will not be permitted to present the expert testimony of Anderson at trial.[8]

---

[7] Because Anderson's opinion is not relevant, the Court does not reach the government's alternative ground that it is an inadmissible legal conclusion as to an ultimate question of law.

### B. Willie Huntley, Jr.

Count Seven charges that Stanley took certain actions against a City police officer ("D.W.") that were "harmful and which interfered with [his] lawful employment and livelihood," in retaliation for D.W.'s providing truthful information to the FBI regarding Stanley's possible commission of certain federal offenses, in violation of 18 U.S.C. § 1513(e). (Doc. 180 at 10-11).[9] Huntley offers expert testimony as to D.W.'s status as a member of the classified service with rights to due process in connection with a dismissal, suspension or demotion, including pre-disciplinary hearing and right of appeal, and with rights to file grievances (and appeals) as to such things as hours of work, working conditions and any other personnel matters not otherwise excluded. (Doc. 159, Exhibit 6).

None of the four actions identified in Count Seven rises to the level of a dismissal or suspension. It is unclear whether the government contends that any of these actions rises to the level of a demotion (Stanley says they do not) but, to the extent they do, Stanley expects the evidence at trial to be that D.W. did not avail himself of the due process protections, including appeal, that he enjoyed in the event of a demotion. Similarly, Stanley expects the evidence to be that D.W. did not avail himself of his right to file a grievance as to any of the cited actions. Stanley argues that D.W.'s failure to do so supports the inference that he suffered no "harmful" action within the contemplation of Section 1513(e). (Doc. 200 at 6-7).

---

[8] This ruling may of course be revisited at trial should the government attempt, and the trial judge permit, a change of position as to whether it seeks to show that Stanley violated an obligation to disclose a conflict of interest.

[9] The Court has found Count Seven duplicitous and has ordered the government to elect which single one of the various listed actions it will rely on at trial as establishing a statutory violation. (Doc. 267).

The government objects that Huntley's evidence is irrelevant.  As a general matter, D.W.'s failure to invoke remedies that were available to him in the event he suffered harm in his employment has a clear tendency to make it less likely that he in fact experienced such harm.[10]  The existence vel non of such harm is of consequence in determining the action, since it is an element of the government's case.  Consequently, the evidence is relevant under Rule 401.

The government mounts no argument to the contrary.  Instead, it argues that the proposed evidence is rendered inadmissible by Rule 608 as "extrinsic evidence to attack the credibility of a victim."  (Doc. 207 at 8).  It maintains that, while Stanley is free to cross-examine D.W. as to his decision to forego available remedies, he is precluded from introducing extrinsic evidence that those remedies were in fact available.  (*Id*.).  It is certainly true that Rule 608(b) "prohibits a party from introducing extrinsic evidence of specific instances of misconduct in order to impeach the general credibility of a witness." *United States v. Cousins*, 842 F.2d 1245, 1249 (11th Cir. 1988).  But Stanley is not offering Huntley's testimony to impeach D.W.'s credibility but to directly establish that D.W. had remedies available if he believed himself harmed by Stanley's alleged actions.[11]  This is perfectly permissible:  despite Rule 608(b), "evidence may be admitted to prove or disprove material facts in a case, even though a previous witness has testified to the contrary."  *Id*. (internal quotes omitted).  The existence of remedies available to D.W. is a material fact (because the failure to invoke them supports the inference he did not suffer the "harm" required by Section 1513(e)), and Stanley can introduce evidence of those remedies even if D.W. denies they exist and even if D.W. does not testify at all.

Without citing Rule 702, the government calls it a "long reach" to argue that "evidence the defendant chose one remedy over another is helpful to the jury in deciding

---

[10] This is so even though the government hints D.W. had reasons for not pursuing those remedies.

[11] Nor is Stanley offering evidence of "misconduct" by D.W.

the issues before it." (Doc. 207 at 8 n.5). But Huntley is not offering evidence that D.W. chose one remedy over another; he is offering evidence that certain remedies exist. The jury cannot be expected to know that these remedies exist, so Huntley's testimony will be helpful to the jury in determining their existence vel non, which is a "fact in issue" under Rule 702.

For the reasons set forth above, the government's motion in limine as to Willie Huntley, Jr. is **granted** with respect to evidence of the remedies available to one dismissed or suspended and **denied** in all other respects.[12]


### C.  Douglas Anderson and Hamilton Boudreaux.

Anderson and Boudreaux will offer opinion testimony on a number of matters, but the government objects to these witnesses only "to the extent that they offer their opinions of the late Mr. Hollingsworth," including their opinions of his "practice and experience." (Doc. 160 at 2-3).

Anderson will testify "concerning [his] relationship and knowledge about Albert Hollingsworth and the services he provided various municipalities with real estate acquisition." In particular, Anderson will testify that Hollingsworth "represented several municipalities in Mobile County in real estate matters …, he assisted municipalities and utility companies in purchasing easements for utility lines, as well as purchasing rights of way in anticipation of condemnation." (Doc. 259, Exhibit 1).

Boudreaux will testify as to the differences between the functions of a right-of-way negotiator such as Hollingsworth and those of a real estate appraiser. In addition, "Mr. Boudreaux knew Albert Hollingsworth and will testify that he was a well know [sic] right of way negotiator for governmental entities." (Doc. 259, Exhibit 2).

---

[12] Should the government clarify in writing that it does not contend that the action on which it relies to establish a violation of Section 1513(e) constitutes a demotion, it may seek an amendment of this order to grant the motion in limine with respect to evidence of the remedies available to one experiencing a demotion.

As the quoted material reflects, Anderson and Boudreaux do not offer their opinions about Hollingsworth. Instead, they offer factual information, based on their personal knowledge of Hollingsworth's experience. The government's failure even to reply to Stanley's brief as to these witnesses stands as an effective abandonment of its unexplained, unsupported request for relief.

For the reasons set forth above, the government's motion in limine as to Douglas Anderson and Hamilton Boudreaux is **denied**.

DONE and ORDERED this 18th day of April, 2012.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE