**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 11-0262-WS** |
| | ) | |
| **STANLEY M. WRIGHT,** | ) | |
| **MARY L. WRIGHT a/k/a** | ) | |
|    **MARY W. STRACHAN, a/k/a** | ) | |
|    **MARY W. COOK, and** | ) | |
| **JANEY GALBRAITH,** | ) | |
| | ) | |
|    **Defendants.** | ) | |

**ORDER**

This matter is before the Court on the motion of defendant Stanley Wright ("Stanley") to exclude expert testimony. (Doc. 218). The government has filed a response, (Doc. 232), and the motion is ripe for resolution.

Stanley is the mayor of the City of Bayou La Batre ("the City"). Count One of the third superseding indictment charges Stanley with conspiring to defraud the United States and to obtain property under the care, custody or control of the City by fraud or other improper means. Count One charges that Stanley participated in the decision to identify certain real property for the construction of a post-Katrina housing development funded by the FEMA grant. The site selected necessitated the acquisition of rights-of-way over three other parcels to accommodate additional and/or wider road lanes. Stanley owned one of these parcels, consisting of approximately 7.5 acres. Stanley transferred 0.208 acre to his co-defendant daughter ("Mary") for no financial consideration. A few days later, Mary sold this parcel to the City in fee (not just a right-of-way) for $27,249 (or $3.00 per square foot). Four days after receiving the purchase price from the City, Mary transferred to Stanley $25,000 spread over three checks and an additional $2,300 to her mother (Stanley's wife), with all four checks deposited in an account jointly owned by Stanley and his wife. (Doc. 180 at 3-6).

**A. Tony Lewis.**

Tony Lewis is a real estate appraiser.  At the request of the government, he prepared an appraisal of the subject property's market value as of its October 2007 sale to the City.  He derived a figure of $5,500, or approximately 20% of the price paid to Mary. Stanley argues that Lewis's opinion is irrelevant because:  (1) he is charged in Count One only with acting under a conflict of interest; and (2) Lewis's opinion is "not tied to the facts of the transaction at issue."

Stanley does not explain how he derives the conclusion that the only wrongdoing encompassed within Count One is his acting under a conflict of interest.  The charge is that Stanley conspired to defraud the United States of its right to have its business affairs conducted honestly, impartially and free from corruption, fraud and similar misconduct. (Doc. 180 at 3).  A preliminary statement quotes a regulation that prohibits acting under a conflict of interest, and this is incorporated by reference within Count One, but that count – which sprawls over five pages – does not purport to limit Stanley's corruption, fraud and similar misconduct to a violation of the regulation.  On the contrary, it notes that Mary sold the 0.208 acre for $27,249 just ten years after Stanley purchased the entire 7.5-acre parcel for $29,000, which on its face challenges the legitimacy of the price paid by the City.  (*Id*. at 5-6).  Count One plainly encompasses wrongdoing concerning the price paid for the parcel.

For his second argument, Stanley invokes *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Under *Daubert*, relevance demands that the proffered expert testimony "is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."  *Id*. at 591 (internal quotes omitted).  This consideration is known as "fit."  *Id*.  Stanley assumes there is no "fit" here because Lewis "assume[d] an open market transaction between a typically motivated buyer and seller," yet the City was not typically motivated to buy because it had no real choice but to

purchase Mary's parcel in order to proceed with the housing development, which enhanced motivation would tend to increase the price it was willing to pay.[1]

Stanley ignores the very test he asks the Court to employ. Expert testimony need not be based on precisely the facts of the case but only "sufficiently" so, enough that the expert opinion "will aid the jury in resolving a factual dispute." Had Lewis opined as to the value of a different parcel of a different size located in a different time zone, there would be insufficient fit between his opinion and the facts of the case because his opinion could not help the jury determine whether the City paid an inappropriately high price for the parcel Mary sold. Here, however, Lewis valued the same parcel as of the same time as the actual sale, and he did so utilizing a standard valuation technique the validity of which Stanley does not question.

Lewis's opinion thus aids the jury in resolving a factual dispute. Lewis's opinion helps establish the price one ordinarily would expect the parcel to command. This furnishes a baseline so that the existence and magnitude of the deviation from that baseline can be measured. In general, the larger that deviation, the less likely that innocent explanations – such as those proffered by Stanley in his motion – account for the disparity. Lewis's opinion is thus relevant under *Daubert*.

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. These tools remain available to Stanley, but exclusion of Lewis's opinion does not.

For the reasons set forth above, Stanley's motion to exclude the expert testimony of Tony Lewis is **denied**.

---

[1] Stanley also argues that Mary was not typically motivated to sell because the City could invoke its power of eminent domain.

**B.  Gerald Byrd.**

Gerald Byrd is a surveyor who has prepared a survey of the subject parcel (one view showing the property prior to road improvements and one showing the property as developed).  The government has provided Stanley with the survey, but Stanley complains it has not provided him a written description of the bases and reasons for certain of Byrd's opinions reflected in the survey, as required by Rule 16(a)(1)(G).  In particular, Stanley says he has not been informed of the source for Byrd's use of a 20-foot setback line and has not been told the basis for Byrd's selection of the location for the capped rebar as it appears on the as-developed survey.

The government asserts that it has now provided in writing the missing information.  (Doc. 232 at 3-4).[2]  Based on this representation, Stanley's motion to exclude the expert testimony of Gerald Byrd is **denied**, without prejudice to his ability to reassert his objection should the government's representation prove inaccurate.

DONE and ORDERED this 19th day of April, 2012.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] The government does not specifically mention the capped rebar but does represent that it has provided the defense with information "concerning the establishment of corners."  (Doc. 232 at 4).  The Court, which has not been supplied a copy of the survey, assumes that the government intends thereby to address the capped rebar.